| | |
|---|---|
| NIKKI GIOVANNI BELLAMY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EAST CAROLINA UNIVERSITY, et al., ) <br> ) <br> Defendants. ) | **MEMORANDUM AND RECOMMENDATION** |

This matter is before the court on the motion by defendants East Carolina University ("ECU") and the University of North Carolina System ("UNC System") (together, "defendants") to dismiss [DE-24] the complaint [DE-10] of *pro se* plaintiff Nikki Giovanni Bellamy ("plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants filed a memorandum in support of the motion to dismiss. [DE-25]. Plaintiff responded in opposition, including supporting materials. [DE-30]. Defendants filed a reply brief in support of its motion to dismiss. [DE-31]. A non-party filer, Trace Julius Dudley ("Ms. Dudley"), filed an affidavit in support of plaintiff's response in opposition. [DE-32].

The time for filing responsive briefs has expired and the pending motion is ripe for adjudication. The motion was referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). [DE-33]. For the reasons set forth below, it is RECOMMENDED that defendants' motion to dismiss [DE-24] be GRANTED and that plaintiff's complaint [DE-10] be DISMISSED.

### I.  BACKGROUND

On September 22, 2022, plaintiff, proceeding *pro se*, initiated this action by filing an application to proceed in forma pauperis ("*IFP application*") [DE-1] that included a proposed

complaint against ECU; the UNC System; Janice Lewis ("Lewis"); Mark Sanders ("Sanders"); and William Gee ("Gee") (the "original defendants"), which raised various claims arising out of plaintiff's alleged employment with and termination by original defendants (*see* [DE-1-1]; [DE-10]). On June 5, 2023, the undersigned issued a deficiency order [DE-5], identifying multiple deficiencies in plaintiff's application including "flaws in plaintiff's proposed complaint[, which] may subject some, or all, of plaintiff's claims to dismissal." [DE-5] at 3. The undersigned provided plaintiff until June 26, 2023, to file an amended IFP application and amended complaint. *Id.* On July 13, 2023, plaintiff filed a motion for extension to file an amended IFP application and amended complaint [DE-6], which the undersigned granted [DE-7], setting the deadline for plaintiff to file her amended IFP application and an amended complaint as August 11, 2023. As of November 15, 2023, plaintiff had still not filed an amended IFP application or an amended complaint. On November 15, 2023, the undersigned, issued an Order and Memorandum and Recommendation, granting plaintiff's IFP application and recommending that all claims against Lewis; Sanders; and Gee be DISMISSED. [DE-9] at 2. The undersigned further recommended that the court allow certain of plaintiff's claims against ECU and the UNC System to proceed and dismiss other of her claims against these defendants.[1] *Id.* The undersigned provided until December 1, 2023, for plaintiff to file objections to the memorandum and recommendation. *Id.* at 15. On December 8, 2023, plaintiff filed a motion [DE-11] for extension of time to file a response to the memorandum and recommendation [DE-9], which the court granted, extending the deadline for plaintiff to file objections to the memorandum and recommendation until February 23, 2024. [DE-12]. Ultimately, plaintiff did not file an objection to the memorandum and

---

[1] The claims ultimately dismissed and allowed to proceed by the court are described below. *See* [DE-13] at 2.

recommendation. On March 19, 2024, the court adopted the conclusions of the undersigned's memorandum and recommendation. [DE-13] at 2. Specifically, the court dismissed plaintiff's claims against defendants Lewis, Sanders, and Gee for failure to state a claim. [DE-13] at 2. The court dismissed plaintiff's hostile work environment claims and her Family and Medical Leave Act ("FMLA") interference claim for failure to state a claim. *Id.* The court allowed plaintiff's (1) Title VII claims of race discrimination for failure to hire, (2) disparate discipline based on race discrimination, [(3)] retaliation, in violation of Title VII; and (4) retaliation," in violation of the FMLA, to proceed against ECU and the UNC System. *Id.*

On June 10, 2024, defendants filed the instant motion to dismiss seeking dismissal of all of plaintiff's remaining claims for failure to state a claim under Rule 12(b)(6) based on the alleged (i) failure by plaintiff to timely file her claims; (ii) the expiration of the applicable statutes of limitations; and (iii) the failure of the complaint to state a claim for relief. [DE-24].

## II. PLAINTIFF'S ALLEGATIONS

On September 22, 2022, plaintiff filed a handwritten complaint against ECU; the UNC System; Lewis, Sanders, and Gee.[2] [DE-10; -10-1]. As attachments to her complaint, plaintiff filed unsigned witness statements from three other individuals [DE-10-2; -10-3; -10-4]; a letter from plaintiff to an unnamed "respondent" [DE-10-5];[3] and an EEOC Right to Sue letter dated June 24, 2022 [DE-10-6], all ostensibly in support of her complaint.

Plaintiff utilized a Title VII of the Civil Rights Act of 1964, codified as amended in 42

---

[2] All citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

[3] In liberally construing plaintiff's complaint, all references herein to the "complaint" refer to the original complaint [DE-10], as amended and supplemented by plaintiff's letter to "respondent." [DE-10-5].

U.S.C. §§ 2000e ("Title VII") employment discrimination *pro se* complaint form [DE-10] and indicated that she was alleging discrimination based on race and disability (*id.* at 3). Throughout her complaint, plaintiff appears to allege race discrimination ([DE-10] at 3); disability discrimination (*id.*); FMLA violations (*id.* at 4); retaliation under Title VII [DE-10-1]; and a hostile work environment, including harassment (*id.*; [DE-10-5] at 1).[4]

Unless otherwise indicated, the undersigned will only summarize below the facts relevant to the claims that survived the court's order dismissing several of plaintiff's original claims. *See* [DE-13].

Plaintiff's complaint alleges that her workplace was discriminatory and abusive as follows:

> I was discriminated against. I was at the time the only minority in the Circulation department. During 2018 my supervisor William Gee yelled at me and told me if I was having cognitive issue [sic] I needed to go out on FMLA leave in front of several staff members and students. I was retaliated against while on FMLA leaving [sic] 2013 and 2018 subject to working against ADA accommodations set for me in 2019. During the Pandemic 2020 to 2021 I was forced to work in condition [sic] even though I was high risk and the doctor stated this in addition.

[DE-10] at 4.

Plaintiff alleges that in 2013 after reporting workplace hostility and discrimination concerns to Lewis, she was "written up" for tardiness despite documented medical issues, while her white co-worker, Pam, was never "written up" for tardiness. [DE-10-5] at 1. Plaintiff also alleges that Lewis did not take any action in response to her and another co-workers' reports of discrimination, hostile environment and bullying. *Id.*

Plaintiff ends her complaint by stating that "I've worked at East Carolina University for 16 years and at least the last 10 years my conditions has developed and exacerberated [sic] under

---

[4] As noted above, the court dismissed plaintiff's hostile work environment claims and her FMLA interference claim for failure to state a claim. [DE-13] at 2.

extreme microagression [sic], hostile, and stressful environment." [DE-10-1].

The relief that plaintiff seeks, according to her complaint, is "$6,000,000 for the mental and physical impairment these actions has [sic] caused." *Id.* Elsewhere in the claim form, plaintiff requests recovery of back pay and "trial by jury on all issues so triable; and any other relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees." [DE-10] at 5.

Plaintiff's filings include what appear to be three unsigned witness statements. *See* [DE-10-2; -10-3; -10-4]. The three witness statements attached to plaintiff's complaint are not affidavits as they are not signed and declared under penalty of perjury. *See* 28 U.S.C. § 1746 (requiring affidavits to be subscribed and dated under penalty of perjury). On September 24, 2024, one of the three witnesses, Ms. Dudley, filed a copy of her statement [DE-32] with the same content, but this copy was notarized and signed under penalty of perjury in support of plaintiff's complaint. The court has reviewed all of the witness statements and finds that they do not add additional causes of action to plaintiff's complaint, nor do they cure any of the deficiencies noted herein. Accordingly, the undersigned will not discuss them further, except as noted herein.[5]

### III. APPLICABLE LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it appears certain that the plaintiff

---

[5] Defendants contend that the court should not consider the third-party statements attached to plaintiff's complaint as "[t]he statements are unverified; they are not referenced or incorporated by reference in [p]laintiff's [c]omplaint; and, do not constitute legal written instruments." [DE-25] at 7. As noted, one of the third-parties, Ms. Dudley, subsequently submitted a sworn and notarized version of her statement. *See* [DE-32]. The undersigned need not resolve the impact of the verified or unverified witness statements on the motion to dismiss, because even if credited, none of these statements change the analysis herein.

cannot prove any set of facts in support of [her] claim entitling [her] to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (internal quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015) ("[I]t is not our task at the motion-to-dismiss stage to determine 'whether a lawful alternative explanation appear[s] more likely' from the facts of the complaint." (alteration in original) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015))), *as amended on reh'g in part* (Oct. 29, 2015).

In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged complaint and view those allegations in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see also Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005) (noting that the court must accept as true all factual allegations of the

complaint). All reasonable factual inferences from the allegations must be drawn in plaintiff's favor. *Edwards*, 178 F.3d at 244. However, bare assertions of legal conclusions or formulaic recitations of the elements of a claim are not entitled to be assumed true. *Iqbal*, 556 U.S. at 680-81.

## IV. ANALYSIS

Defendants contend that plaintiff's complaint should be dismissed for the following reasons:

1. Plaintiff failed to timely exhaust administrative remedies pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") and these claims are time barred.

2. Plaintiff's [c]omplaint fails to state a claim against [d]efendants pursuant to Title VII based on any theory.

3. Plaintiff failed to timely file her claim pursuant to the [FMLA] and this claim is therefore barred by the applicable statute of limitations;

4. Plaintiff's [c]omplaint fails to state a claim against [d]efendants pursuant to FMLA, based on any theory.

5. Plaintiff's [c]omplaint fails to sufficiently state that [p]laintiff is entitled to any relief requested in the [c]omplaint and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

[DE-24] at 2.

The court considers each of these arguments below.

**A.    Title VII claims**

Defendants contend that plaintiff's Title VII claims are time-barred because all of the alleged discriminatory acts under Title VII occurred more than 180 days before plaintiff filed her EEOC charge. [DE-24] at 2; [DE-25] at 10.

Plaintiff's complaint provides that her "action is brought pursuant to Title VII of the Civil

7

Rights Act of 1964 for employment discrimination" on the basis of her race. [DE-10] at 2-3. Title VII makes it unlawful for an employer "to fail or refuse to hire . . . or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As noted above, following its frivolity review, the court allowed plaintiff's "Title VII claims of race discrimination for failure to hire, disparate discipline based on race discrimination, and retaliation to proceed against defendants East Carolina University and the University of North Carolina System" to proceed. [DE-13] at 2.

A plaintiff must exhaust her administrative remedies by filing a charge with the EEOC before she can have standing to file suit under Title VII. *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). A Title VII charge with the EEOC must generally be filed within 180 days after the alleged unlawful employment practice occurred.[6] 42 U.S.C. § 2000e-5(e)(1). The analysis of when an "unlawful employment practice . . . occurred" differs depending on whether the claim arises from discrete discriminatory acts or hostile work environment claims. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 S. Ct. 2061, 2070, 153 L. Ed. 2d 106 (2002). The court previously dismissed plaintiff's hostile work environment claims (*see* [DE-13] at 2), therefore, the undersigned will only address the timing of discrete discriminatory acts.

"A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Morgan*, 122 S. Ct. at 2070. "A party, therefore, must file a charge within . . . 180 . . . days of the

---

[6] "The statutory filing period is extended to 300 days in a deferral state if the plaintiff 'initially instituted proceedings with a [designated Fair Employment Practices ('FEP')] State or local agency.'" *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 539 (E.D.N.C. 2008) (alteration in original) (quoting 42 U.S.C. § 2000e–5(e)(1)). Plaintiff makes no allegations that she did so in this case. However, even if the filing period were extended to 300 days, it would not change the underlying analysis in this case, as the relevant acts also occurred more than 300 days before plaintiff's filing of her EEOC charge, as discussed herein.

8

date of the act or lose the ability to recover for it." *Id.* at 2071. However, "a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 1132, 71 L. Ed. 2d 234 (1982).

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814, 161 L. Ed. 2d 669 (2005). These elements with respect to the timing of plaintiff's EEOC charge are that the plaintiff "(1) . . . has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255, 136 S. Ct. 750, 755, 193 L. Ed. 2d 652 (2016) (quotation omitted). Similarly, the Fourth Circuit has noted that equitable tolling generally only applies when "plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant [. . . or] extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (internal quotations omitted); *Donald v. Novant Health, Inc.*, 689 F. Supp. 3d 170, 178 (E.D.N.C. 2023).

Plaintiff alleges that she filed her claim with the EEOC on or about July 19, 2021. [DE-10] at 4. January 20, 2021, was 180 days prior to the date that plaintiff allegedly filed her charge with the EEOC.

With respect to her failure to hire claim, plaintiff states that she is an African American female, that she applied for a position in the North Carolina Collection for which she was qualified based upon her bachelor's degree and 20 years of experience, but that the position was instead

9

given to a Caucasian security guard, inferring that he was less qualified than plaintiff. [DE-10-5] at 2. The description of this incident within the general chronological narrative of plaintiff's complaint suggests that these events occurred in 2013 or 2014, but, in any event, prior to 2018. *See id.*

With respect to plaintiff's Title VII disparate discipline and retaliation claims, plaintiff alleges that sometime during 2013 she was "written up" for tardiness despite documented medical issues, while a Caucasian co-worker was never "written up" for tardiness and absences. [DE-10-5] at 1. Plaintiff also appears to allege that this disciplinary action was taken in retaliation for reporting discrimination under Title VII. *See id.* ("[A]nyone who raises any concerns within and possibly other departments becomes a target of discrimination, hostile environment and bullying."). Accordingly, the events supporting plaintiff's Title VII claims of race discrimination for failure to hire; disparate discipline based on race discrimination; and Title VII retaliation all appear to have occurred more than 180 days before plaintiff filed her EEOC charge in 2021.

Plaintiff's response in opposition to the motion to dismiss does not contest that her EEOC charge was untimely, but instead appears to argue that equitable tolling of the time requirements is appropriate because "oftentimes victims have a hard time coming forward with their story of treatment and violations for years for the fear of retaliation." *See* [DE-30] at 4. Courts in other circuits have found that a "[p]laintiffs' purported fear of retaliation, however, is not a ground for equitable tolling[, as] . . . the doctrine of equitable tolling would effectively vitiate the statutory time requirement because an employee could defer filing indefinitely so long as she had an apprehension about possible retaliation." *Carter v. W. Pub. Co.*, 225 F.3d 1258, 1266 (11th Cir. 2000) (collecting cases). Title VII expressly provides protection from retaliation for making a

charge of discrimination under Title VII.  42 U.S.C. § 2000e–5(a).

Plaintiff alleges that at various points throughout her employment with defendants, including in 2013 and in 2018, she "voic[ed] [her] concerns about the department" ([DE-10-5] at 2), which suggests that any fear of retaliation had at various times not prevented her from "coming forward with [her] story of treatment and violations" (*cf.* [DE-30] at 5).  Additionally, plaintiff was ultimately able to file a charge with the EEOC and continued to be employed with the defendant for almost a year and a half after filing that charge.  *See* [DE-30] at 1 (indicating that plaintiff's employment was terminated on December 4, 2023).  Moreover, plaintiff makes no allegation that she was ultimately terminated as a result of filing her EEOC charge.  *See generally* [DE-10]; [DE-30].

The undersigned does not find any indication that plaintiff was diligently seeking to file a charge with the EEOC and was only prevented from asserting her claims "by some kind of wrongful conduct on the part of the defendant" or that "extraordinary circumstances beyond [her] control made it impossible to file the claims on time."  *See Harris*, 209 F.3d at 330.  The untimely filing of plaintiff's charge with the EEOC, therefore, bars her Title VII claims.  Accordingly, the undersigned RECOMMENDS that plaintiff's Title VII claims be DISMISSED.  In light of the lack of timeliness, the undersigned need not address whether plaintiff's Title VII claims independently fail to state a claim.

**B.  FMLA claims**

There are two categories of claims under the FLMA: "[(1)] interference claims, in which an employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights under the Act, . . . and [(2)] retaliation claims, in which an employee asserts that [her] employer

11

discriminated against [her] because [she] engaged in activity protected by the Act." *Elliott v. Rollins*, No. 5:11-CV-693-FL, 2013 WL 5460193, at *7 (E.D.N.C. Sept. 30, 2013) (alterations with exception of omission in original) (quoting *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir.2001). Here, the court dismissed plaintiff's FMLA interference claim following its frivolity review, but allowed her FMLA retaliation claim to proceed. [DE-13] at 2.

1. **Statute of limitations**

Defendants contend that "[p]laintiff failed to timely file her claim pursuant to the [FMLA] and this claim is therefore barred by the applicable statute of limitations." [DE-24] at 2.

Plaintiff alleges that she experienced retaliation for taking her FMLA leave in 2013 and 2018. [DE-10] at 4. Plaintiff appears to allege that the retaliation consisted of her ADA accommodations not being respected in 2019. *See id.* ("I was retaliated against while on FMLA leaving [sic] 2013 and 2018 subject to working against ADA accomodations [sic] set for me in 2019").

The statute of limitations for FMLA claims is generally two years, but extends to three years in the case of willful violations of the Act. 29 U.S.C. § 2617(c)(1)-(2). The FMLA does not define the term "willful". *Porter v. New York Univ. Sch. of L.*, 392 F.3d 530, 531 (2d Cir. 2004). However, numerous courts have found, including in the context of FMLA claims, that retaliation inherently includes willfulness. *Schaneville v. Publix Super Markets, Inc.*, No. 3:20-CV-01038, 2021 WL 5054106, at *7 (M.D. Tenn. Nov. 1, 2021) ("[T]he FMLA retaliation claim based on termination in retaliation for exercising FMLA leave would be subject to the three-year statute of limitations in 29 U.S.C. § 2617(c)(2)."); *Chandler v. Meetings & Events Int'l, Inc.*, No.

3:13-CV-200-WGH-WTL, 2015 WL 8675225, at *3 (S.D. Ind. Dec. 11, 2015) ("[A] finding of retaliation is inherently a finding of willfulness" in the context of the Age Discrimination in Employment Act); *Lilley v. BTM Corp.*, 958 F.2d 746, 754 (6th Cir. 1992) (agreeing that "retaliation automatically includes willfulness" (footnote omitted)). The undersigned finds that the three-year statute of limitations should apply to plaintiff's FMLA retaliation claim.

Plaintiff appears to claim that the relevant retaliatory act occurred in 2019, when defendants allegedly forced plaintiff to work against her ADA accommodations. Plaintiff initiated this case by filing her motion to proceed *in forma pauperis* on September 22, 2022. Accordingly, a retaliatory act must have occurred on or after September 22, 2019, in order to satisfy the statute of limitations. While the precise date or period of retaliation in 2019 is unclear from plaintiff's allegations, viewing the facts in the light most favorable to the plaintiff, the undersigned does not find that plaintiff's FMLA retaliation claims is barred by the relevant statute of limitations for purposes of the Rule 12(b)(6) motion before the court.

### 2. Failure to state a claim

Defendants additionally allege that "[p]laintiff's [c]omplaint fails to state a claim against [d]efendants pursuant to FMLA, based on any theory." [DE-24] at 2. As noted above, plaintiff's FMLA retaliation claim is the only FMLA claim that survived this court's frivolity review. [DE-13] at 2.

To successfully plead a FMLA retaliation claim, a plaintiff "must first make a *prima facie* showing 'that [s]he engaged in protected activity, that the employer took adverse action against [her], and that the adverse action was causally connected to the plaintiff's protected activity.'" *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (quoting *Cline v.*

13

*Wal–Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir.1998)). The undersigned previously noted that "the causal connection plaintiff is alleging [between her FMLA leave and the associated retaliation] is not entirely clear." [DE-9] at 14.

The Fourth Circuit has "held that a lengthy time lapse between the employer becoming aware of the claimant's protected activity and the alleged adverse employment action [can negate] any inference that a causal connection existed." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001). The interval between the alleged protected of activity of taking FMLA leave in 2013 and 2018 and the alleged adverse employment action of withholding ADA accommodations in 2019 is unclear based on plaintiff's pleadings. While not entirely clear from plaintiff's complaint, the 2013 FMLA incident may refer to "documented medical issues that caused [certain occurrences of] tardiness and absences." [DE-10-5] at 1. The only specific FMLA-related events alleged to have occurred in 2018 are that plaintiff (i) had a "FMLA related doctor's appointment" on July 25, 2018, and (ii) generally discussed FMLA policy with two of her supervisors on July 31, 2018. [DE-10-5] at 3. Plaintiff does not provide any details about the alleged denial of her ADA accommodations in 2019. She even appears to suggest that she did not have any significant work-related complaints in early 2019. *See* [DE-10-5] at 4 (plaintiff noting that before February 2019, she thought "all the foolish, political games came to a halt at work.").

Accordingly, even viewing the facts in the light most favorable to plaintiff, there was an interval of at least six months between the last protected act and the alleged retaliatory conduct. The Fourth Circuit has found that such an interval "is sufficient to negate any inference of causation." *Hooven-Lewis*, 249 F.3d at 278; *see also Conner v. Schnuck Markets, Inc.*, 121 F.3d

1390, 1395 (10th Cir.1997) (finding that a four-month interval between protected activity and termination was not sufficient to justify inference of causation). To the extent that plaintiff's complaint was intended to allege that her return to in-person work during the pandemic in 2020 and 2021 ([DE-10] at 4) was in retaliation for her FMLA leave in 2013 and 2018, such allegations would suffer from an even great want of a temporal causal link.

Accordingly, the undersigned finds that plaintiff has not sufficiently alleged retaliation under the FMLA to survive a 12(b)(6) motion and RECOMMENDS that such claim be DISMISSED.

## V. CONCLUSION

For the reasons set forth above, the undersigned RECOMMENDS that defendants' motion to dismiss [DE-24] be GRANTED, and that plaintiff's complaint [DE-10] be DISMISSED.

IT IS DIRECTED that a copy of this Order and Memorandum and Recommendation be served on plaintiff or, if represented, her counsel. Plaintiff shall have until **December 5, 2024**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum**

**and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar plaintiff from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins***, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 20th day of November, 2024.

_____
Brian S. Meyers
United States Magistrate Judge